IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARRY LEE KELLER, JR.,**[1] | : | CIVIL ACTION NO. 4:23-CV-1806 |
| Plaintiff | : | |
| | : | (Judge Neary) |
| v. | : | |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,**[2] | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Before the court is the Report and Recommendation ("R&R") (Doc. 21) of Magistrate Judge Martin C. Carlson recommending that the court affirm the Social Security Commissioner's decision to deny plaintiff Barry Lee Keller benefits. Keller has filed objections. (Doc. 22). Finding no error after a *de novo* review of the contested portions, the court will adopt the R&R and deny Keller's appeal.

**I. Factual Background & Procedural History**

Magistrate Judge Carlson's R&R thoroughly details the background of this case, (Doc. 21 at 3-13), and therefore, the court will provide an abbreviated version.

Keller applied for supplemental security income on May 4, 2020, his second such application following denial by an Administrative Law Judge ("ALJ") in February 2019 of his first application. (Id. at 3). Keller alleged an onset date of his

---

[1] In the brief in support, reply brief, and objection to the R&R, counsel for plaintiff incorrectly refers to his own client as "Brian Keller." (See Docs. 13, 20, 22).

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025, during the pendency of this action. He is automatically substituted as a party to this action pursuant to Federal Rule of Civil Procedure 25(d).

disability of January 1, 2015, later amending it to the date of his second application for benefits. (Id.) Keller was 36 years old, which is defined as a younger individual 18-49, and he had experience as a salvage laborer. (Id. at 3-4). He alleged disabilities due to the following severe impairments: degenerative disc disease with cervical fusion, thoracic outlet syndrome with partial first rib resection, chronic tension-type headache, and obesity. (Id. at 3). Keller's primary impairments, however, are weakness and pain in his left arm and hand, which are nondominant. (Id. at 4).

Prior to his alleged onset date, Keller underwent a cervical discectomy and fusion in March 2017 and a rib resection in June 2018. (Id.) Keller complained of left side pain and weakness at this time, but neurological follow ups in May and July of 2017 documented no acute distress and 5/5 strength in his upper extremities. (Id.) He continued to complain of left side pain, and treatment notes from December 2017 indicate that physicians followed a conservative course of treatment with medication and injections. (Id. at 4-5). Keller reported a decrease in pain in August 2018 follow the rib resection, but by October 2018, he again complained about left side pain. (Id. at 5). Treatment notes at the time indicated his left side pain was longstanding, though stable, and his left side strength was 4/5 with his treatment consisting of steroid injections and medication. (Id.)

In December 2018, a physical therapist and physician prepared a functional capacity assessment, concluding he could perform sedentary work and may be capable of light work if his symptoms lessened. (Id.) His pain level was a subjective

between 4 and 6 out of 10. (Id.) Keller's treatment records following his onset date showed that he was able to perform activities of daily living while complaining of left shoulder and arm pain. (Id. at 6). OSS studies of his left arm and shoulder undertaken on August 10, 2020, showed normal results. (Id.)

On September 24, 2020, Keller was examined by consulting examining physician Dr. Ahmed Kneifati. (Id.) Dr. Kneifati found Keller had 5/5 strength in his extremities and determined that he was not totally disabled. (Id.) Instead, Keller could perform sedentary work without any postural limits but was limited to occasional handling and fingering with his left arm and hand. (Id. at 6-7).

A hearing before an ALJ took place on January 21, 2022, and both Keller and a vocational expert testified. (Id. at 7). Keller testified about the debilitating effects of his left side weakness and numbness, and the vocational expert testified that there were positions in the national economy with Keller's restrictions based on personal observation, though the vocational expert noted that the Dictionary of Occupational Titles does not distinguish between left- and right-hand limitations. (Id. at 7-8). The positions were inspector, office helper, and locker room attendant. (Doc. 22 at 4). On June 7, 2022, the ALJ denied Keller's application for benefits. (Doc. 21 at 8).

The ALJ concluded that Keller had not engaged in substantial gainful activity since his application date of May 4, 2020. (Id.) The ALJ next found Keller had the following severe impairments: degenerative disc disease with cervical fusion, thoracic outlet syndrome with partial first rib resection, chronic tension-type

headache, and obesity. (Id.) The ALJ determined none of these conditions met the Commissioner's listing criteria. (Id.) The ALJ then created the following residual functional capacity ("RFC") for Keller:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with no left upper extremity pushing/pulling and no more than occasional reaching, handling, fingering, and feeling with the non-dominant left upper extremity; with occasional crouching, kneeling, stooping, balancing, and climbing ramps and stairs but no climbing ladders, ropes, or scaffolds or crawling; and with no more than occasional flexion, extension, and rotation of the head.

(Id. at 8-9).

In making this determination, the ALJ considered the medical evidence, different medical opinions, and Keller's testimony. (Id. at 9). The ALJ engaged in a two-step process to evaluate Keller's alleged symptoms, finding that while his medically determinable impairments could reasonably be expected to cause some of the symptoms, his statements about the intensity, persistence, and limiting effects were not entirely consistent with the evidence in the record. (Id. at 9). Keller's medical records suggested improvement since his partial first resection for his thoracic outlet syndrome. (Id. at 9-10). The ALJ also found the alleged severity of Keller's symptoms were not supported by the results of the consultative examination performed by Dr. Kneifati, nor were his activities of daily living consistent with the medical record given Keller's allegations of disabling symptoms and limitations. (Id. at 10-11). None of the medical opinions found Keller to be totally disabled, instead each concluded he was capable of performing either sedentary or light work. (Id. at 11).

Keller appealed the ALJ's determination, arguing both the symptom evaluation was error and the RFC lacked support in the record. (Id. at 13). Judge Carlson found that both determinations were supported by substantial evidence. (Doc. 21).

Keller objected to the R&R on the ALJ's RFC determination. (Doc. 22). The Commissioner filed a response. (Doc. 23). The matter is thus fully briefed and ripe for resolution.

## II. Legal Standard

When objections are timely filed to a magistrate judge's report and recommendation, the district court must conduct a *de novo* review of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)). For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72(b), advisory committee notes; see also Univac. Dental Co. v. Dentsply, Intern., 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citations omitted). Regardless of whether objections are made, the district

court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); L.R. 72.31.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). The United States Supreme Court defines "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). The Third Circuit Court of Appeals explains that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Halter, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when an ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

### III. Discussion

Keller's objections to the RFC determination concern the ALJ and Judge Carlson's alleged failure to properly address his handling and fingering in his non-dominant hand. (Doc. 22 at 1-5). As noted above, the ALJ fashioned the RFC and found Keller capable of performing light work, "except with no left upper extremity pushing/pulling and no more than occasional reaching, handling, fingering, and feeling with the non-dominant left upper extremity." (Doc. 21 at 8-9). With this RFC, the vocational expert noted that Keller could perform the jobs of inspector, office helper, or locker room attendant. (Doc. 22 at 4). But, Keller agues, these jobs each require frequent handling or fingering and thus exceed his capabilities. (Id.) To Keller, it is not enough that the vocational expert opined on his ability to perform these positions, even with his RFC limitations handling and fingering with his non-dominant hand, based on his personal observation. (Id.)

Following *de novo* review, Judge Carlson correctly determined that the ALJ's RFC determination was supported by substantial evidence. As Judge Carlson noted, each expert to opine on Keller determined that he was not disabled and was capable of light or sedentary work. (Doc. 21 at 26). These opinions were supported by the medical records and Keller showed improvement with treatment. (Id.) The ALJ took the difference in capabilities between Keller's left and right hands in determining

the RFC, and the vocational expert testified that through personal experience, Keller could perform a number of positions found in the Dictionary of Occupational Titles. Keller's objections are ultimately an invitation to re-weigh the evidence, which this court may not do. See <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)).

As for Judge Carlson's recommendation as to the ALJ's symptom evaluation, Keller did not file objections, and the court reviews the R&R for clear error. There is no clear error on the face of the record concerning the symptom evaluation. Thus, the court must affirm the decision of the ALJ.

## IV.   Conclusion

For the reasons stated above, the court will adopt the R&R in full and deny plaintiff Barry Lee Keller's social security appeal. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   December 8, 2025